**STEPTOE & JOHNSON LLP**
Seong H. Kim*
2121 Avenue of the Stars, Suite 2800
Los Angeles, California, U.S. 90067
Telephone: (310) 734-3200
Facsimile:  (310) 734-3300
Email: skim@steptoe.com
*Pro hac vice application forthcoming

**RICHARD W. PIERCE LAW OFFICE LLC**
Richard W. Pierce, CNMI Bar No. F0165
P.O. Box 503514 CK
Saipan, MP 96950-3514
Telephone: (670) 235-3425
Email: rwpierce@pticom.com

Attorneys for Defendants E.Land World Co., Ltd.
(erroneously sued as E-Land World, Ltd.), Suwaso
Corporation, Micronesia Resort, Inc. (erroneously
sued as Micronesian Resort, Inc.), and KwangWon
Seo (erroneously sued as Dennis Seo)

FILED
Clerk
District Court

FEB - 5 2016

for the Northern Mariana Islands
By_____
(Deputy Clerk)

## UNITED STATES DISTRICT COURT

## NORTHERN MARIANA ISLANDS

VINCENT DLG. TORRES,

      Plaintiff,

      vs.

E-LAND WORLD, LTD., SUWASO
CORPORATION, MICRONESIAN
RESORT, INC., ROH, JONG-HO,
SEONG MIN KANG, IL KYU KIM, TAE
HO KIM, STEVE HWANG, DENNIS
SEO and DOES 1-3,

      Defendants.

Case No.__ CV 16- 0004

**NOTICE OF REMOVAL OF DEFENDANTS E.LAND WORLD CO., LTD., SUWASO CORPORATION, MICRONESIA RESORT, INC., AND KWANGWON SEO**

Superior Court Complaint Filed: 10/19/15

# TABLE OF CONTENTS

**Page**

Introduction................................................................................................................1

Parties .....................................................................................................................5

Jurisdiction and Venue .............................................................................................6

Plaintiff's Claims and Procedural History ................................................................6

I.      Plaintiff Invested In Suwaso, And Then Procured The Subject Agreement For The Benefit Of Fumoto And Himself. .................................................................6

II.     Plaintiff Alleges Defendants Used The Agreement As Part Of A Scheme To Take Control Of Suwaso So They Could Operate It For Their Benefit To The Detriment Of Minority Shareholders (Plaintiff And Fumoto).................................7

III.    Plaintiff Filed Suit And The Parties Stipulated To Extend The Date For Defendants' Responses To The Complaint. ..............................................8

Grounds For Removal.................................................................................................9

I.      The FAA Provides Expansive Removal Jurisdiction To Federal Courts. ................9

II.     The Agreement Falls Under The New York Convention......................................11

III.    This Litigation Relates To The Agreement. .....................................................12

        A.      Plaintiff Is Bound By The Agreement's Arbitration Clause. .......................13

        B.      Defendants Are Entitled to Enforce the Arbitration Clause. ........................15

        C.      The Arbitration Clause Encompasses Plaintiff's Claims And The Arbitrator (Not the Court) Decides Arbitrability And The Scope of Arbitration. .......17

        D.      The Agreement Provides Substantive Defenses To Plaintiff's Claims. .......20

IV.     This Notice Is Timely And Complies With All Procedural Requirements............22

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*Acosta v. Master Maint. & Constr., Inc.*,
5
    452 F.3d 373 (5th Cir. 2006)............................................................2, 9, 10

6

*Ada v. K. Sadhwani's Inc.*,
    3 N. Mar. I. 303, 1992 WL 397532 (1992) .................................................21

7

*Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*,
8
    170 F.3d 349 (2d Cir. 1999)..........................................................................14

9

*Am. United Logistics, Inc. v. Catellus Dev. Corp.*,
    319 F.3d 921 (7th Cir. 2003).........................................................................13
10

*Arnold v. Arnold Corp.-Printed Commc'ns For Bus.*,
11
    920 F.2d 1269 (6th Cir. 1990).......................................................................16

12

*Arthur Andersen LLP v. Carlisle*,
13
    556 U.S. 624 (2009) ......................................................................................16

14

*Balen v. Holland Am. Line Inc.*,
    583 F.3d 647 (9th Cir. 2009).........................................................................11
15

*Becker v. Davis*,
16
    491 F.3d 1292 (11th Cir. 2007).....................................................................16

17

*Beiser v. Weyler*,
18
    284 F.3d 665 (5th Cir. 2002)..........................................................9, 10, 11, 12

19

*Benton v. Vanderbilt Univ.*,
    137 S.W.3d 614 (Tenn. 2004) .......................................................................13

20

*Berman v. Dean Witter & Co.*,
21
    119 Cal. Rptr. 130 (Ct. App. 1975) ...............................................................13

22

*Boyko v. Benning Fin. Grp., LLC*,
    737 F. Supp. 2d 1140 (E.D. Cal. 2010).........................................................19
23

*Chiron Corp. v. Ortho Diagnostic Sys.*,
24
    207 F.3d 1126 (9th Cir. 2000).......................................................................18

25

*CNMI Dep't of Pub. Health & Envtl. Servs. v. Castillon*,
26
    No. 05-0517C (CNMI Super. Ct. July 20, 2006) ...........................................1

27

*Contec Corp. v. Remote Solution*,
    398 F.3d 205 (2d Cir. 2005)..........................................................................18
28

ii

*Fabian Fin. Servs. v. Kurt H. Volk, Inc. Profit Sharing Plan,*
   768 F. Supp. 728 (C.D. Cal. 1991)............................................................... 19

*First Options of Chicago v. Kaplan,*
   514 U.S. 938 (1995) ............................................................................................ 17

*Gwathmey Siegel Kaufman & Assocs. Architects v. Rales,*
   518 Fed. Appx. 20 (2d Cir. 2013) .................................................................... 18

*Hobbs v. Alcoa, Inc.,*
   501 F.3d 395 (5th Cir. 2007).............................................................................21

*In re Titanium Dioxide Antitrust Litig.,*
   962 F. Supp. 2d 840 (D. Md. 2013) ................................................................ 16

*Infuturia Global Ltd. v. Sequus Pharm., Inc.,*
   631 F.3d 1133 (9th Cir. 2011)...................................................................passim

*Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH,*
   206 F.3d 411 (4th Cir. 2000)............................................................................ 14

*KMART Corp. v. Balfour Beatty, Inc.,*
   994 F. Supp. 634 (D.V.I. 1998)........................................................................ 13

*Legacy Wireless Servs., Inc. v. Human Capital, L.L.C.,*
   314 F. Supp. 2d 1045 (D. Or. 2004) ............................................................... 14

*Letizia v. Prudential Bache Sec., Inc.,*
   802 F.2d 1185 (9th Cir. 1986)......................................................................... 15

*Mediterranean Enters., Inc. v. Ssangyong Corp.,*
   708 F.2d 1458 (9th Cir. 1983).......................................................................... 19

*Merci Corp. v. World Int'l Corp.,*
   2005 MP 10, 2005 WL 3781861 (2005) ........................................................ 20

*Mitsubishi Motors v. Soler Chrysler-Plymouth,*
   473 U.S. 614 (1985) ..................................................................................... 1, 11

*Momot v. Mastro,*
   652 F.3d 982 (9th Cir. 2011)........................................................................... 18

*Oracle Am. v. Myriad Grp.,*
   724 F.3d 1069 (9th Cir. 2013) ......................................................................... 17

*Petrofac v. DynMcDermott Petrol. Operations Co.,*
   687 F.3d 671 (5th Cir. 2012)............................................................................ 17

*Roby v. Corp. of Lloyd's,*
   996 F.2d 1353 (2d Cir. 1993)........................................................................... 16

NOTICE OF REMOVAL OF DEFENDANTS E.LAND WORLD CO., LTD., SUWASO CORPORATION,
MICRONESIA RESORT, INC., AND KWANGWON SEO

Doc. # DC-8633523 v.12

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974) ........................................................................... 10

*Schoenduve Corp. v. Lucent Tech.*,
    442 F.3d 727 (9th Cir. 2006) ............................................................. 18

*Shelter Mortgage Corp. v. Castle Mortgage Co., L.C.*,
    117 Fed. Appx. 6 (10th Cir. 2004) ................................................... 21

*Simula v. Autoliv*,
    175 F.3d 716 (9th Cir. 1999) ....................................................... 18, 19

*Suter v. Munich Reinsurance Co.*,
    223 F.3d 150 (3d Cir. 2000) ............................................................. 10

*Wynn Resorts v. Atlantic-Pacific Capital*,
    497 Fed. Appx. 740 (9th Cir. 2012) .................................................. 18

**STATUTES**

9 U.S.C. § 202 ........................................................................................ 11

9 U.S.C. § 203 .......................................................................................... 6

9 U.S.C. § 205 .................................................................................. passim

28 U.S.C. § 1446(a) ............................................................................... 22

**LEGISLATIVE MATERIALS**

S. Rep. No. 91-702 (1970) ..................................................................... 10

**OTHER AUTHORITIES**

13 Williston on Contracts § 37:26 (4th ed.) ......................................... 13

Restatement (Second) of Agency § 368 (1958) ..................................... 13

Article 19, AAA International Arbitration Rules .................................. 17

R-7, AAA Commercial Arbitration Rules ............................................. 17

NOTICE OF REMOVAL OF DEFENDANTS E.LAND WORLD CO., LTD., SUWASO CORPORATION,
MICRONESIA RESORT, INC., AND KWANGWON SEO

Doc. # DC-8633523 v.12

1  |  **TO THE COURT AND ITS CLERK AND PLAINTIFF AND PLAINTIFF'S**
2  |  **COUNSEL OF RECORD:**

3  |  PLEASE TAKE NOTICE that Defendants E.Land World Co., Ltd. (erroneously
4  |  sued as E-Land World, Ltd.) ("E-Land"), Suwaso Corporation ("Suwaso"), Micronesia
5  |  Resort, Inc. (erroneously sued as Micronesian Resort, Inc.) ("MRI"), and KwangWon
6  |  Seo (erroneously sued as Dennis Seo) the only defendants served to date (collectively,
7  |  "Defendants") hereby remove this action from the Superior Court for the
8  |  Commonwealth of the Northern Mariana Islands ("CNMI") to this Court.

9  |  **INTRODUCTION**

10  |  1.  Defendants remove this suit pursuant to Chapter 2 of the Federal Arbitration
11  |  Act ("FAA"), 9 U.S.C. §§ 201-208.  In that Chapter, Congress gave federal courts
12  |  jurisdiction over matters relating to international arbitration agreements and awards in
13  |  light of "the emphatic federal policy in favor of arbitral dispute resolution" that "applies
14  |  with special force in the field of international commerce," and to ensure compliance
15  |  with the United States' treaty obligations under the New York Convention on the
16  |  Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517 (1970) (the
17  |  "Convention").  *Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614, 631
18  |  (1985).

19  |  2.  To that end, the FAA contains a "sweeping" removal provision that "provides
20  |  federal courts with remarkably broad removal authority."  *Infuturia Global Ltd. v.*
21  |  *Sequus Pharm., Inc.*, 631 F.3d 1133, 1138 & n.5 (9th Cir. 2011).  The FAA applies to
22  |  the CNMI and its courts.  *See, e.g.*, *CNMI Dep't of Pub. Health & Envtl. Servs. v.*
23  |  *Castillon*, No. 05-0517C (CNMI Super. Ct. July 20, 2006) (Hon. R. Manglona).  The
24  |  FAA permits a defendant to remove a state court action that "relates to an arbitration
25  |  agreement or award falling under the Convention . . . at any time before the trial
26  |  thereof."  9 U.S.C. § 205.  This standard is satisfied "whenever an arbitration agreement
27  |  falling under the Convention could *conceivably* affect the outcome of the plaintiff's
28  |  case" or where it "has some connection" "as a matter of logic" to "the subject matter of

1

the litigation." *Infuturia*, 631 F.3d at 1138 (emphasis in original); *Acosta v. Master Maint. & Constr., Inc.*, 452 F.3d 373, 378-79 (5th Cir. 2006).

3.  In his Complaint, Plaintiff Vincent Dlg. Torres ("Plaintiff") asserts claims that "relate[] to," within the meaning of the FAA, a Purchase and Sale Agreement of Capital Stock of Suwaso Corporation, executed on August 23, 2012 and amended on October 12, 2012, by Yusuke Fumoto ("Fumoto") and Defendant MRI (the "Agreement").

4.  The Agreement – which is at the center of Plaintiff's Complaint – resulted in the transfer of a majority of Suwaso's stock from Fumoto to MRI.  In doing so, the Agreement established a commercial relationship between Fumoto, who resides in Japan, and MRI, which is located in CNMI, as well as commercial relationships among Defendants and Plaintiff, who held, and continues to hold, a 15% interest in Defendant Suwaso.  (Fumoto is the record holder of the remaining minority interest in Suwaso.)

5.  The Agreement broadly requires arbitration of any disputes related to it.  The Agreement's arbitration clause provides that:

> The Parties agree that ***any claim or dispute*** [1] between them or [2] against ***any agent, employee, successor, or assign of the other***, ***whether related to this Agreement or otherwise***, and ***any claim or dispute*** [3] related to this Agreement or [4] the relationship or duties contemplated under this Agreement, including [5] the validity of this arbitration clause, ***shall be resolved by binding arbitration*** by the American Arbitration Association, under the Arbitration Rules then in effect.

[Agreement § X.I. (emphasis added).]   Under the plain meaning of this clause, the parties expressly agreed to submit "any claim or dispute" to arbitration that: (1) arises between the parties; (2) is asserted against any of the parties' agents, employees, successors, or assigns; (3) relates to the Agreement; (4) relates to the relationships or duties contemplated by the Agreement; or (5) concerns the arbitration clause itself.  Any *one* of these suffices to trigger arbitration; all five are implicated by Plaintiff's claims here.

6. Plaintiff's claims relate to the Agreement and the Agreement may affect the outcome of his claims. Indeed, this case would not exist but for the Agreement's execution:

    a.    Plaintiff claims that he negotiated the Agreement on Fumoto's behalf, and that he and Fumoto were defrauded during those negotiations. [*E.g.,* Compl. ¶¶ 31, 38-39.] Plaintiff's other claims relate to the Agreement's aftermath, and turn on the relationships and duties created by the Agreement, including the fiduciary duties of a majority shareholder (MRI) to minority shareholders (Plaintiff and Fumoto). [*See, e.g., id.* ¶¶ 31-39, 43, 46-47, 57, 65-66, 84-85.] For example, Plaintiff alleges that the Agreement, by which E-Land took control of Suwaso through MRI, permitted E-Land to allegedly misappropriate Suwaso's corporate opportunities at the expense of Suwaso's minority shareholders. [*See, e.g.,* Compl. ¶¶ 11-12, 40, 43, 64-69.]

    b.    The Agreement has a conceivable effect on the outcome of the case and is related to Plaintiff's claims in other respects. For example, the Agreement's provisions may be used to defeat Plaintiff's "misrepresentation" claims (e.g., by virtue of the integration clause stating that the Agreement supersedes all prior negotiations, agreements, and understandings), and Plaintiff's claims that Defendants were obligated to engage or not engage in alleged conduct (e.g., actions relating to certain real property or vendor accounts).

    c.    Further, Defendants have unresolved disputes with Fumoto arising directly from the Agreement (which are subject to mandatory arbitration and cannot be adjudicated in this Court) that may impact Plaintiff's claims. One such dispute concerns the transfer pursuant to the Agreement of Fumoto's remaining Suwaso stock. If that dispute is resolved such that Fumoto retains his interest in Suwaso, Plaintiff's claims may inure to Fumoto's benefit. For example, Fumoto will continue to be entitled to any distributions that Suwaso makes to its shareholders, and will benefit to the extent Plaintiff's claims increase Suwaso's revenues or assets. In addition, the Agreement contains an indemnification provision that broadly requires Fumoto to indemnify

1   Defendants for all claims arising out of the Agreement, including Plaintiff's claims in
2   this case.  Thus, even if Plaintiff were to prevail, it is possible that Defendants will pay
3   nothing to Plaintiff because Fumoto must indemnify any damages awarded to Plaintiff.
4   The Agreement therefore clearly affects the outcome of Plaintiff's case.

5      7.  Plaintiff is bound by the arbitration clause, especially in light of his claims
6   and allegations.  Plaintiff benefited from the Agreement and seeks through his claims to
7   further benefit from it while avoiding its obligation to arbitrate disputes related to it.
8   [*See, e.g.,* Compl. ¶¶ 33-36, 38-39, 46.]  Plaintiff seeks to enforce specific provisions of
9   the Agreement – either as written or as modified by alleged side agreements or
10  representations – that allegedly were intended to benefit Plaintiff directly.  [*See, e.g.,*
11  Compl. ¶¶ 21, 23-24, 27, 33-36, 38.]  Plaintiff claims that Defendants allegedly made
12  misrepresentations to Plaintiff, as Fumoto's agent in the negotiations, to induce Fumoto
13  to enter the Agreement (which requires all disputes related to it be arbitrated).  [*Id.* ¶ 31-
14  39, 46.]  Plaintiff's claims also arise from Defendants' alleged fiduciary duties by the
15  majority shareholder (MRI, by virtue of the Agreement) to minority shareholders
16  resulting from the Agreement [*e.g., id.* ¶¶ 58, 67, 83, 85, 88], and apply equally to and
17  benefit directly Fumoto, who remains a minority shareholder.  Fumoto signed the
18  Agreement and, thus, Fumoto and his agent are bound by the arbitration clause.  Any
19  attempt by Plaintiff to vindicate Fumoto's alleged rights arising from the Agreement or
20  to otherwise assert claims relying on the Agreement that Torres negotiated as Fumoto's
21  agent trigger the Agreement's arbitration clause.

22     8.  Defendants are entitled to invoke the Agreement's arbitration clause against
23  Plaintiff given Plaintiff's claims and allegations.  Plaintiff's allegations cast Defendant
24  E-Land as the Agreement's real party in interest, the "*de facto*" buyer of Fumoto's
25  majority interest in Suwaso under the Agreement, and the alleged principal of signatory
26  MRI, in connection with the Agreement.  [Compl. ¶ 12.]  Plaintiff also alleges that the
27  remaining Defendants acted at the direction, and as agents or employees, of E-Land.
28  [*E.g.,* Compl. ¶¶ 3, 6-9, 11, 43, 46, 57, 64, 84.] The arbitration clause expressly covers

4

the parties' agents and employees, and the remaining Defendants are entitled to the benefit of the arbitration clause.

9.   Moreover, the Agreement's arbitration clause expressly mandates arbitration of disputes about the validity of the arbitration clause itself, and incorporates the Rules of the American Arbitration Association ("AAA"), which grant the arbitrator the authority to determine his or her own jurisdiction and the scope of the agreement to arbitrate.  By including this language in the arbitration clause, the threshold question of the arbitrability of Plaintiff's claims is subject to arbitration.

10. As a result, the Agreement falls under the Convention and Chapter 2 of the FAA, and makes federal court the proper forum for this international dispute (until it is sent to arbitration pursuant to the Agreement's arbitration mandate).

## PARTIES

11. Plaintiff holds 15% of the outstanding stock of Suwaso, and is a resident of the CNMI.

12. Defendant E-Land is a Korean corporation located in Korea.

13. Defendant MRI is incorporated under the laws of the CNMI, and is located in the CNMI.

14. Defendant Suwaso is incorporated under the laws of the CNMI, is located in the CNMI, and owns the Coral Ocean Point Resort ("COP").

15. Defendant Jongho Roh (erroneously sued as Roh, Jong-Ho) ("Roh"), is an employee of E-Land and a former director of MRI and Suwaso, and resides in Korea. Roh has not been served with the Summons and Complaint, and has not yet appeared in these proceedings.

16. Defendants Seong Min Kang ("Kang") and Il Kyu Kim ("Kim I") are directors of MRI and Suwaso, and reside in Korea.  Kang and Kim I have not been served with the Summons and Complaint, and have not yet appeared in these proceedings.

5

17. Tae Ho Kim ("Kim T") is a former director and officer of MRI and Suwaso, and resides in CNMI. Kim T has not been served with the Summons and Complaint, and has not yet appeared in these proceedings.

18. Defendant Steve Hwang ("Hwang") is an employee of E-Land and resides in Korea. Hwang has not been served with the Summons and Complaint, and has not yet appeared in these proceedings.

19. Defendant KwangWon Seo (erroneously sued as Dennis Seo) ("Seo") is an employee of MRI and resides in Saipan.

## JURISDICTION AND VENUE

20. This Court has jurisdiction pursuant to Chapter 2 of the FAA because this action relates to an arbitration agreement falling under the New York Convention. 9 U.S.C. § 203.

21. Subject to the Agreement's arbitration mandate, venue is proper in the District of the Northern Mariana Islands because the CNMI Superior Court, the place where the action was pending, falls within this judicial district. 9 U.S.C. § 205.

## PLAINTIFF'S CLAIMS AND PROCEDURAL HISTORY

I.    **Plaintiff Invested In Suwaso, And Then Procured The Subject Agreement For The Benefit Of Fumoto And Himself.**

22. According to Plaintiff's allegations, by the year 2000, COP, once a premier destination for tourists, had fallen on hard times. [Compl. ¶¶ 19-20.] By the year 2011, Plaintiff alleges, "the government was not going to renew" COP's land permit. [*Id.* ¶ 21.] To allow COP to continue, Plaintiff contends that he and Fumoto invested in COP, with Fumoto buying the majority of Suwaso's shares and Plaintiff acquiring a minority interest. [*Id.* ¶ 26.]

23. Plaintiff alleges that, because of a tax dispute, Fumoto no longer wanted to move forward with COP, and sought to sell his shares in Suwaso. [*Id.* ¶¶ 27-30.] To that end, "Fumoto gave [Plaintiff] full authority to negotiate the sale of Suwaso on his

NOTICE OF REMOVAL OF DEFENDANTS E.LAND WORLD CO., LTD., SUWASO CORPORATION, MICRONESIA RESORT, INC., AND KWANGWON SEO

Doc. # DC-8633523 v.12

behalf." [*Id.* ¶ 31.]   In other words, Plaintiff was acting as Fumoto's agent.   They allegedly agreed that Plaintiff would remain a minority shareholder. [*Id.*]

24. Pursuant to his duty as agent, as Plaintiff alleges, he then negotiated the sale of Fumoto's shares to E-Land.   [Compl. ¶ 32.]   Plaintiff claims that, although the purchase price was "lower than what Fumoto wanted," Plaintiff convinced Fumoto to enter the Agreement and sell his shares to E-Land (actually E-Land's alleged designee MRI) based on alleged misrepresentations by E-Land, including what E-Land would do for Suwaso, COP, and Plaintiff following the sale. [*Id.* ¶¶ 33-37.]

25. For example, Plaintiff alleges that, to induce him to get Fumoto to sell Fumoto's majority interest in Suwaso, E-Land promised to allow Plaintiff to remain a director of Suwaso, buy property from Juan Tenorio to be held in Plaintiff's name, comply with COP's land permit, and pay all of Suwaso's outstanding debts. [Compl. ¶ 38.]

26. The Agreement was executed on August 22, 2012, and "MRI, E-Land's designee[,] became the majority owner of Suwaso stock." [*Id.* ¶ 37.]

## II.   Plaintiff Alleges Defendants Used The Agreement As Part Of A Scheme To Take Control Of Suwaso So They Could Operate It For Their Benefit To The Detriment Of Minority Shareholders (Plaintiff And Fumoto).

27. Plaintiff asserts that, after the execution of the Agreement, E-Land "reneged" on its promises, and that Defendants, "each and all of them acting in concert, assisting, aiding and abetting each other have violated CNMI law." [Compl. ¶¶ 39-40.]   Indeed, the Complaint's theme is that E-Land allegedly "conspired with" the other Defendants and "embarked upon a scheme," starting with the inducement of the Agreement, to "tak[e] control of Suwaso," disregard "the rights of minority shareholders," "conceal" information, and "siphon[] off" corporate "funds and assets" to the detriment of Plaintiff and other minority shareholders. [*See, e.g., id.* ¶¶ 40, 43, 51-52, 59, 65-67, 77, 84.]

28. Plaintiff asserts claims for fraudulent misrepresentation, accounting, fraudulent concealment and usurpation of corporate opportunity, breach of fiduciary duty, and assisting breach of fiduciary duty.  [*Id*. ¶¶ 45-96.]

29. The fraudulent misrepresentation claim avers that E-Land, through its agents, made misrepresentations "for the specific purpose of persuading [Plaintiff] to convince Fumoto to sell his shares [to E-Land's designee MRI]" – in other words, to induce Fumoto, via his agent Plaintiff, to enter the Agreement.  [*Id*. ¶46.]

30. Plaintiff's remaining claims turn on Defendants' alleged duties to Plaintiff (and Fumoto) as minority shareholders – relationships arising out of and created by the Agreement whereby MRI became Suwaso's majority shareholder.  [*See id*. ¶¶ 56, 57, 64.]

31. For example, Plaintiff alleges that "[w]hile MRI was the majority shareholder and they were all under the direct control and following the directions of E-Land, [Defendants] negligently, carelessly, and intentionally failed to perform the duties required of directors, so that funds and assets of Suwaso were mismanaged, wasted, diverted and siphoned off to MRI and E-Land." [Compl. ¶ 84.]  Plaintiff alleges that he (and, for the same reasons, Fumoto as the other minority shareholder) "suffered great loss, the value of his stock was greatly reduced and he lost large gains through the waste of defendant corporation's assets and capital value." [*Id*. ¶ 85; *see also* ¶ 88 (Defendants have decreased the value of Suwaso's shares).]  Indeed, Plaintiff relies on the same alleged misconduct constituting his accounting and corporate-opportunity claims in his general claim for breach of fiduciary duty.  [*Id*. ¶ 85]

III.    **Plaintiff Filed Suit And The Parties Stipulated To Extend The Date For Defendants' Responses To The Complaint.**

32. Plaintiff initiated this lawsuit in the Superior Court on October 19, 2015.

33. He effected service of process on Suwaso and Seo on the same day.  He effected service on MRI on November 4, 2015.

8

1    34. On November 9, the Superior Court granted the parties' Stipulation and

2    Proposed Order for Response to Complaint, pursuant to which the parties agreed that

3    Suwaso, MRI, and Seo would not be required to respond to the Complaint until 30 days

4    after written notice from Plaintiff that he was prepared to proceed with the litigation.

5    35. On December 11, 2015, Plaintiff filed a Declaration of Service asserting that

6    Plaintiff had effected service of process on E-Land.  Thereafter, on December 29, 2015,

7    the Superior Court approved Plaintiff's and E-Land's stipulation extending E-Land's

8    time to respond until January 29, 2016.

9    36. On January 29, 2016, the Superior Court then granted the parties' further

10   stipulation extending E-Land's deadline to respond to the Complaint until February 5,

11   2016.

12   37. Defendants Roh, Kang, Kim I, Kim T, and Hwang have not been served,

13   although their consent to removal is anticipated once they are served.

14   38. As of this removal, no defendant has filed any motion, an Answer, or other

15   responsive pleading, nor have the parties commenced any discovery.

16                          **GROUNDS FOR REMOVAL**

17   **I.      The FAA Provides Expansive Removal Jurisdiction To Federal Courts.**

18   39. In Chapter 2 of the Federal Arbitration Act, "Congress granted the federal

19   courts jurisdiction over Convention cases and added one of the broadest removal

20   provisions, § 205, in the statute books."  *Acosta*, 452 F.3d at 377.

21   40. Section 205 permits removal of any action whose subject matter "relates to"

22   an arbitration agreement or award that falls under the New York Convention:

> Where the subject matter of an action or proceeding pending in a
> State court *relates to an arbitration agreement or award falling*
> *under the Convention*, the defendant or the defendants may, at *any*
> *time before the trial thereof, remove such action or proceeding* to
> the district court of the United States for the district and division
> embracing the place where the action or proceeding is pending.
> The procedure for removal of causes otherwise provided by law
> shall apply, except that *the ground for removal provided in this*
> *section need not appear on the face of the complaint but may be*
> *shown in the petition for removal*.  For the purposes of Chapter 1
> of this title any action or proceeding removed under this section

9

shall be deemed to have been brought in the district court to which it is removed.

9 U.S.C. § 205 (emphasis added).

41. Holding that "easy removal is exactly what Congress intended in § 205," the Ninth Circuit has described this provision as "remarkably broad." *Infuturia*, 631 F.3d at 1138 n.5 (quoting *Beiser v. Weyler*, 284 F.3d 665, 674 (5th Cir. 2002)). Indeed, Congress's purpose in "creat[ing] [this] special removal right" was "to channel cases into federal court." *Acosta*, 452 F.3d at 377.

42. Congress sought to move Convention cases into the district courts in order to "unify the standard by which the agreements to arbitrate are observed." *Suter v. Munich Reinsurance Co.*, 223 F.3d 150, 155 (3d Cir. 2000) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974)). "Uniformity is best served by trying all Convention cases in federal court unless the parties unequivocally choose otherwise." *Acosta*, 452 F. 3d at 377.

43. A uniform standard is essential because consistent and reliable enforcement of international arbitration awards in the United States – which includes its territories such as the CNMI – vindicates the principle of reciprocity from which American businesses benefit under the New York Convention. Congress recognized that the Convention "serve[s] the best interests of Americans doing business abroad by encouraging them to submit their commercial disputes to impartial arbitration for awards which can be enforced in both U.S. and foreign courts." S. Rep. No. 91-702, at 3 (1970). For American businesses to "gain rights under the Convention, though, Congress had to guarantee enforcement of arbitral contracts and awards made pursuant to the Convention in United States courts." *Suter*, 223 F.3d at 154. Thus, the ultimate goal of establishing a uniform federal jurisdiction over international arbitration agreements is "to secure for United States citizens predictable enforcement by foreign governments of certain arbitral contracts and awards made in this and other signatory nations." *Id.*

44. As the Supreme Court has explained:

10

> A parochial refusal by the courts of one country to enforce an international arbitration agreement would not only frustrate these purposes, but would invite unseemly and mutually destructive jockeying by the parties to secure tactical litigation advantages. . . . [T]he dicey atmosphere of such a legal no-man's-land would surely damage the fabric of international commerce and trade, and imperil the willingness and ability of businessmen to enter into international commercial agreements.

*Scherk*, 417 U.S. at 516-17.  Thus, "Congress's intent in § 205 was to confer jurisdiction liberally." *Beiser*, 284 F.3d at 674.

## II.   The Agreement Falls Under The New York Convention.

45. Under Chapter 2 of the FAA, "an arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial" "falls under the Convention" unless it "is entirely between citizens of the United States" and has no "other reasonable relation with one or more foreign states."  9 U.S.C. § 202.

46. Here, the Agreement is in writing and invokes the AAA, which is located in the United States, a signatory to the Convention.   The Agreement effectuates a commercial transaction – the sale of stock – that is not entirely between citizens of the United States.  Rather, the Agreement involves a businessman in Japan (Fumoto) and a Korean corporation (E-Land), allegedly (according to Plaintiff) acting through its agent (MRI), a CNMI corporation.   The Agreement therefore satisfies the Convention's prerequisites, and the Convention governs the Agreement's arbitration clause. *See, e.g.*, *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 654-55 (9th Cir. 2009) (explaining the Convention's scope).

47. Significantly, courts *must* enforce an agreement to arbitrate under the Convention except in the narrow circumstances where the agreement is "null and void, inoperative or incapable of being performed." *Mitsubishi Motors*, 473 U.S. at 619 n.3 (quoting 21 U.S.T. at 2519).

NOTICE OF REMOVAL OF DEFENDANTS E.LAND WORLD CO., LTD., SUWASO CORPORATION, MICRONESIA RESORT, INC., AND KWANGWON SEO

Doc. # DC-8633523 v.12

### III. This Litigation Relates To The Agreement.

48. The Ninth Circuit has held that "the phrase 'relates to' is plainly broad." *Infuturia*, 631 F.3d at 1138; *see Beiser*, 284 F.3d at 670 (noting the "plainly broad meaning of 'relates to'"). "[W]henever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit.'" *Infuturia*, 631 F.3d at 1138 (emphasis in original).

49. Because the arbitration agreement need only "***conceivably***" affect the outcome, "Federal courts will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense." *Id.* (emphasis added). "As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case. That is all that is required to meet the low bar of 'relates to'" and justify removal under the FAA. *Id.*

50. One obvious way that an arbitration agreement impacts the outcome of a case is if it requires the case to be arbitrated. *See Beiser*, 284 F.3d at 669-70. In *Beiser*, a decision cited heavily by the Ninth Circuit, the Fifth Circuit found the necessary relationship whenever a defendant "contends that the agreements require [a plaintiff] to submit his claims to an arbitrator" and the "contention is not frivolous." *Id.*

51. For reasons with merit far beyond the "not frivolous" standard, the Agreement requires this case to be arbitrated. As noted above, the Agreement's arbitration clause provides for AAA arbitration of all claims or disputes (i) among the parties to the Agreement or against their agents or employees, (ii) related to the Agreement itself, or (iii) related to or arising from the relationships or duties contemplated under it. [Agreement § X.I.] Given the expansive scope of this clause and Plaintiff's claims, Plaintiff's litigation relates to the arbitration agreement for purposes of FAA removal.

---

12

NOTICE OF REMOVAL OF DEFENDANTS E.LAND WORLD CO., LTD., SUWASO CORPORATION, MICRONESIA RESORT, INC., AND KWANGWON SEO

**A.     Plaintiff Is Bound By The Agreement's Arbitration Clause.**

52. The arbitration clause applies to Plaintiff both as Fumoto's agent and in Plaintiff's individual capacity.

53. Plaintiff's fraudulent misrepresentation claim expressly turns on alleged promises that, according to Plaintiff, had Defendants not made, Fumoto would not have sold his stock and the Agreement would never have been consummated. [*See, e.g.*, Compl. ¶ 51 ("[Plaintiff] did rely on E-Land's representations and promises and based on this reliance, convinced Fumoto to sell his shares of Suwaso to E-Land"); *id.* ¶ 52 ("If [Plaintiff] had known that the representations and promises were false, he would not have persuaded Fumoto to sell his shares.").] According to Plaintiff, these alleged misrepresentations were made to him precisely while he was negotiating for Fumoto – that is, in his capacity as Fumoto's agent. [*See, e.g.*, Compl. ¶¶ 31-39.]

54. Because Fumoto signed the Agreement and is bound by the arbitration clause, any attempt by Plaintiff, as Fumoto's agent, to vindicate Fumoto's alleged rights arising from the Agreement (e.g., alleged victim of Defendants' alleged misrepresentations [Compl. ¶¶ 36-39, 46]) must comply with the arbitration clause. *See* Restatement (Second) of Agency § 368 (1958) ("In an action brought by an agent in his own name on behalf of his principal, the other party to the contract has all the defenses which would be available to him if the action were brought by the principal"); *see also, e.g.*, *Berman v. Dean Witter & Co.*, 119 Cal. Rptr. 130, 133 (Ct. App. 1975) (non-signatory plaintiff and non-signatory defendant required to arbitrate because both acted as agents for signatories to an arbitration agreement governing transaction at issue and both agents had no greater or lesser rights in litigation than their principals).

55. In addition, Plaintiff benefitted from the Agreement and is seeking to further benefit from the Agreement and, thus, Plaintiff must comply with the Agreement's arbitration clause. "The third-party beneficiary may not selectively participate in the contract, rather it must accept the contract as a whole." *KMART Corp. v. Balfour Beatty, Inc.*, 994 F. Supp. 634, 637 (D.V.I. 1998). As such, "[w]hen the contract

13

contains an arbitration clause which is legally enforceable, the general view is that the [third-party] beneficiary is bound by it to the same extent that the promisee is bound." 13 Williston on Contracts § 37:26 (4th ed.); *see also Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 931 (7th Cir. 2003), as amended on denial of reh'g (Apr. 3, 2003) (third-party beneficiary to lease with arbitration clause required to arbitrate claims arising from lease); *Benton v. Vanderbilt Univ.*, 137 S.W.3d 614, 618-19 (Tenn. 2004) (beneficiaries are subject to arbitration clauses in the underlying contracts).

56. The Agreement contains several provisions that directly benefitted Plaintiff, and other provisions that Plaintiff claims were modified orally or otherwise outside the Agreement to benefit him, that Plaintiff seeks to enforce here. [*E.g.*, Compl. ¶¶ 33-36, 38-39, 46.] Plaintiff alleges that Defendants' failure to abide by these provisions in the Agreement – as written or modified – has damaged him. [*E.g.*, *id.* ¶¶ 12, 52-53.]

57. Plaintiff is also equitably estopped from avoiding the Agreement's arbitration clause because he received benefits "flowing directly from the agreement." *Legacy Wireless Servs., Inc. v. Human Capital, L.L.C.*, 314 F. Supp. 2d 1045, 1057 (D. Or. 2004); *see also Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000) (plaintiff estopped from refusing to arbitrate its claims against manufacturer where manufacturer's contract with distributor containing arbitration clause provided the necessary "factual foundation for every claim asserted"); *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999) (non-signatory owners of a yacht required to arbitrate claims against signatory, an agency that erroneously certified to shipbuilder that the yacht was seaworthy, because the certification allowed the owners to obtain lower insurances rates and register the vessel).

58. Plaintiff negotiated the Agreement to create his relationship with Defendants and enable him to save his investment in Suwaso. Indeed, according to the Complaint, Plaintiff pursued the Agreement because he thought E-Land "was the best partner for

14

1  [him] because it was a billion dollar company" that could "build 200 or more hotel

2  rooms" and turn COP "into a Five Star Resort." [Compl. ¶ 34.] In contrast, without the

3  Agreement and the transactions it contemplated, Plaintiff alleges that COP was

4  essentially headed for ruin. [*See id.* ¶¶ 13-30.] Plaintiff cannot reap the direct benefits

5  of the Agreement he negotiated and the relationships it created and then avoid its

6  arbitration clause in asserting claims related to that Agreement.

7     59. In addition, Plaintiff's claims arise from the alleged breaches of alleged

8  fiduciary duties to minority shareholders [*e.g.*, *id.* ¶¶ 58, 67, 83, 85, 88], and apply

9  equally to and benefit directly Fumoto, who remains a minority shareholder. Even

10  claims allegedly asserted in Plaintiff's individual capacity expressly invoke rights

11  equally applicable to Fumoto as the only other minority shareholder of Suwaso. [*See,*

12  *e.g.*, Compl. ¶¶ 56-57 (accounting claim); *id.* ¶ 64 (corporate-opportunity claim); *id.* ¶¶

13  84-85 (breach-of-fiduciary-duty claim).] As such, to the extent Plaintiff is seeking to

14  vindicate Fumoto's interests or rights, Plaintiff must proceed through arbitration under

15  the Agreement. Further, if Plaintiff were to proceed to trial on his claims, the same

16  Defendants could be exposed to another trial on the very same issues brought by

17  Fumoto. Fumoto has not joined this litigation as a plaintiff, however, and has the right

18  to arbitrate his disputes under the Agreement. To avoid the risk of Defendants being

19  burdened with multiple or inconsistent obligations to Plaintiff and Fumoto, Plaintiff

20  should be compelled to file his claims in the arbitral forum required by the Agreement

21  since that is where Fumoto can be joined under the Agreement.

22     **B.     Defendants Are Entitled to Enforce the Arbitration Clause.**

23     60. In addition to MRI which is a signatory to the Agreement, the other

24  Defendants have standing to compel Plaintiff to arbitrate his claims for at least three

25  reasons. First, Plaintiff's own allegations, which he cannot now deny, make E-Land the

26  principal counter-party to Fumoto under the Agreement by characterizing all of the

27  other defendants as E-Land's agents, employees or "designees." [*See, e.g.*, Compl. ¶ 37

28  (Under the Agreement, "MRI, E-Land's designee[,] became the majority owner of

15

NOTICE OF REMOVAL OF DEFENDANTS E.LAND WORLD CO., LTD., SUWASO CORPORATION,
MICRONESIA RESORT, INC., AND KWANGWON SEO
Doc. # DC-8633523 v.12

Suwaso stock.").]   The arbitration clause expressly covers any claims against any "agent" or "employee" of the parties to the Agreement, and therefore covers Plaintiff's claims against E-Land and the other Defendants.  [Agreement § X.I.]

61. Second, even if the other Defendants did not fall within the express terms of the arbitration clause, federal courts have consistently afforded agents the benefit of arbitration agreements entered into by their principals to the extent that the alleged misconduct relates to their behavior as officers or directors or in their capacities as agents of the corporation. *See, e.g., Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986) (individual defendants entitled to arbitrate plaintiff's claims relating to their conduct as employees of signatory); *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993) (same – "disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement"); *Arnold v. Arnold Corp.-Printed Commc'ns For Bus.*, 920 F.2d 1269, 1281 (6th Cir. 1990) (same – "if [plaintiff] can avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as [defendants] in his complaint, or signatory parties in their individual capacities only, the effect of the rule requiring arbitration would, in effect, be nullified").

62. Nowhere in his Complaint does Plaintiff contend that the subsidiary or individual Defendants acted outside their representative capacities; rather, Plaintiff consistently imputes their conduct to E-Land.  [*E.g.*, Compl. ¶¶ 46, 48, 57, 64, 71, 84, 92, 93.]

63. Third, because Plaintiff has alleged a coordinated scheme and conspiracy among Defendants, they all have standing to enforce the Agreement to which their alleged misconduct relates. *See Becker v. Davis*, 491 F.3d 1292, 1303 (11th Cir. 2007) ("The defendants argue that since the complaint alleges a conspiracy between signatory defendants and nonsignatory defendants, equitable estoppel allows a nonsignatory defendant to compel arbitration. We agree."), abrogated on other grounds by *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009); *see also In re Titanium Dioxide*

16

*Antitrust Litig.*, 962 F. Supp. 2d 840, 851 (D. Md. 2013) (explaining that non-signatory defendants may enforce arbitration agreements in response to allegations of "coordinated behavior between signatories and nonsignatories ... [that] are based on the same facts, are inherently inseparable, and ... fall within the scope of the arbitration clauses at issue").

### C.   The Arbitration Clause Encompasses Plaintiff's Claims And The Arbitrator (Not the Court) Decides Arbitrability And The Scope of Arbitration.

64. The arbitration clause applies to both Plaintiff and Defendants for the reasons set forth above.  Plaintiff's claims must be arbitrated without further inquiry into the relationship between those claims and the Agreement.  The arbitration clause makes clear that "the Parties agree[d] that ***any claim or dispute between them*** or against any agent, employee, successor, or assign of the other, ***whether related to this Agreement or otherwise*** … shall be resolved by binding arbitration" by the AAA.  [Agreement § X.I. (emphasis added).]  In other words, the Court need and should not analyze further the relationship between Plaintiff's claims and the Agreement, and arbitration is required on this basis alone and, certainly, removal jurisdiction under the FAA is established.

65. At the most basic level, the Agreement's arbitration clause affects this litigation by requiring the question of whether Plaintiff's claims are arbitrable to be referred to the arbitrator.  "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." *First Options of Chicago v. Kaplan*, 514 U.S. 938, 943 (1995).

66. Here, the Agreement's arbitration provision specifically states that the "validity of this arbitration clause[] shall be resolved by binding arbitration by the [AAA], under the Arbitration Rules then in effect." [Agreement § X.I.]  In turn, AAA Rule 7 gives the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration

1  agreement" and even "the existence or validity of a contract of which an arbitration

2  clause forms a part."   R-7, AAA Commercial Arbitration Rules, *available at*

3  www.adr.org; *see also* Article 19, AAA International Arbitration Rules, *available at*

4  www.adr.org (granting same authority) (courtesy copies of R-7 and Article 19 attached

5  as Exhibit A).

6        67. This language has caused "[v]irtually every circuit to have considered the

7  issue [to] determine[] that incorporation of the [AAA] arbitration rules constitutes clear

8  and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am.*

9  *v. Myriad Grp.*, 724 F.3d 1069, 1074 (9th Cir. 2013); *see Petrofac v. DynMcDermott*

10 *Petrol. Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) ("We agree with most of our

11 sister circuits that the express adoption of these [AAA] rules presents clear and

12 unmistakable evidence that the parties agreed to arbitrate arbitrability."); *Gwathmey*

13 *Siegel Kaufman & Assocs. Architects v. Rales*, 518 Fed. Appx. 20, 21 (2d Cir. 2013)

14 ("[B]y incorporating the [AAA] rules the parties agreed to have the arbitrators decide

15 arbitrability."); *Contec Corp. v. Remote Solution*, 398 F.3d 205, 209 (2d Cir. 2005)

16 ("[W]hen . . . parties explicitly incorporate rules that empower an arbitrator to decide

17 issues of arbitrability, the incorporation serves as clear and unmistakable evidence of

18 the parties' intent to delegate such issues to an arbitrator."); *cf. Wynn Resorts v.*

19 *Atlantic-Pacific Capital*, 497 Fed. Appx. 740 (9th Cir. 2012) (parties agreed to arbitrate

20 arbitrability by incorporating JAMS rules, which contain similar language).

21       68. Where, as here, the agreement provides for the arbitration of arbitrability, the

22 Ninth Circuit has found it to be reversible error to deny a motion to stay and rule on the

23 arbitrability of claims for fraud, breach of fiduciary duty, accounting, and usurped

24 corporate opportunity in connection with an asset purchase transaction.   *Momot v.*

25 *Mastro*, 652 F.3d 982, 984 (9th Cir. 2011).   As in *Momot*, any question about the

26 arbitrability of Plaintiff's claims must be referred to arbitration.

27       69. The arbitration clause at issue here also expressly applies to any claim or

28 dispute "related to this Agreement." [Agreement § X.I.] The Ninth Circuit, like other

18

federal courts, has construed such "relating to" language to be "broad and far reaching." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1131 (9th Cir. 2000). "When the arbitration clause calls for any dispute 'relating to or arising out of' the agreement to be submitted to arbitration, the parties intend the clause to reach all aspects of the relationship." *Schoenduve Corp. v. Lucent Tech.*, 442 F.3d 727, 732 (9th Cir. 2006) (citations and quotation marks omitted). This case not only arises out of the Agreement, but it simply would not exist if the Agreement did not exist.

70. Applying a similarly broad arbitration clause, the Ninth Circuit has held that it covers claims so long as they "touch matters covered by the contract containing the arbitration clause." *Simula v. Autoliv*, 175 F.3d 716, 721 (9th Cir. 1999). Plaintiff's allegations relating to the Agreement's express subject matters clearly "touch matters covered by the contract."

71. In addition, Plaintiff's claims based on the shareholder relationships created by the Agreement that made E-Land a shareholder "hav[e] their origin or genesis in the contract." *Id.*; *see Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) (claims for "breach of the fiduciary duty created by the [Joint Venture] Agreement, clearly fall within the scope of the arbitration clause [in that agreement] and are thus proper subjects for arbitration"); *Boyko v. Benning Fin. Grp., LLC*, 737 F. Supp. 2d 1140, 1144 (E.D. Cal. 2010) (ordering claims for accounting, misrepresentation, and breach of fiduciary duty, among others, to arbitration because all arose from investment advisory agreements with arbitration clause); *Fabian Fin. Servs. v. Kurt H. Volk, Inc. Profit Sharing Plan*, 768 F. Supp. 728, 731 (C.D. Cal. 1991) (breach of fiduciary duty claim under ERISA compelled to arbitration because claim, although based on federal statute, arose from plan documents with arbitration clause).

72. Indeed, Plaintiff's own allegations link his corporate-opportunity claim – a form of breach of fiduciary duty – to the Agreement and the transfer of control that the Agreement accomplished. For example, he alleges that, after making the promises that induced the Agreement, and "after taking control of Suwaso … E-Land, through its

19

1  agents[,] employees and designees, sold special VIP memberships in Korea that allowed

2  members special discounted rates at COP, without providing any notice to [Plaintiff] or

3  the shareholders of Suwaso [*i.e.*, Plaintiff and Fumoto]." [Compl. ¶ 43.]

4      73. In the same vein, the same alleged broken promises that Plaintiff contends

5  induced the Agreement also constitute Defendants' alleged breaches of fiduciary duty.

6  For example, Plaintiff alleges that Defendants promised to "never do anything to violate

7  his rights as a minority shareholder," give him the "respect due to a minority

8  shareholder," and "keep him fully informed of all E-Land projects, plans and actions

9  affecting Suwaso." [*Id.* ¶¶ 35, 46(b)-(c).] Defendants have now allegedly "reneged" on

10 those promises by allegedly concealing accounting information and usurping corporate

11 opportunities, among other things. [*Id.* ¶ 39.]

12     74. At bottom, in light of the broad scope of the Agreement's arbitration clause, it

13 is not "completely absurd or impossible" that this litigation must proceed to arbitration.

14 *Infuturia*, 631 F.3d at 1138. Thus, the arbitration clause "will impact the disposition of

15 the case," and the case may be removed under the FAA. *Id.*

16     **D.**    **The Agreement Provides Substantive Defenses To Plaintiff's Claims.**

17     75. Under the FAA, it is not necessary that Plaintiff's claims arise directly under

18 the Agreement; it is sufficient that the Agreement may provide a substantive defense to

19 his claims. *See Infuturia*, 631 F.3d at 1138-39 (holding that an arbitration agreement or

20 award "relates to" an action under § 205 when it "provides a defense" on the merits).

21 Here, the Agreement's integration clause (§ X.K), for example, provides a defense to

22 Plaintiff's fraudulent misrepresentation claim. As noted above, he alleges that "Fumoto

23 gave [him] full authority to negotiate the sale of Suwaso [stock] on [Fumoto's] behalf."

24 [Compl. ¶ 31.] Plaintiff also alleges that, "to induce [him] to persuade Fumoto to sell to

25 E-Land, E-Land made several specific representations and promises." [*Id.* ¶ 38.] Those

26 alleged representations form the basis of Plaintiff's fraud claim. [*Id.* ¶ 46.] "The

27 inclusion of an integration clause in a written document is strong evidence that the

28

NOTICE OF REMOVAL OF DEFENDANTS E.LAND WORLD CO., LTD., SUWASO CORPORATION,
MICRONESIA RESORT, INC., AND KWANGWON SEO

Doc. # DC-8633523 v.12

1   parties intended that document to represent the entirety of their agreement." *Merci*

2   *Corp. v. World Int'l Corp.*, 2005 MP 10, 2005 WL 3781861, *3 (2005).

3       76. The oral modifications or side agreements alleged by Plaintiff "relate to the

4   same subject matter" as the Agreement such that, had those promises been made, "the

5   parties, situated as were the ones to the contract, would naturally and normally include

6   the one [the oral agreement] in the other [the written agreement]." *Id.* at *8. Because

7   the parties did not incorporate these alleged oral representations into the Agreement,

8   any extrinsic evidence offered to prove them would be barred by the parol evidence

9   rule. *Id.*

10      77. Moreover, the integration clause undermines – if not forecloses – the

11  reasonableness of Plaintiff's reliance on the alleged representations by E-Land that went

12  beyond the express terms and conditions of the Agreement. *See, e.g., Ada v. K.*

13  *Sadhwani's Inc.*, 3 N. Mar. I. 303, 1992 WL 397532, *3 (1992) (a fraudulent

14  misrepresentation claim requires claimant's "justifiable reliance upon the

15  misrepresentation"); *Hobbs v. Alcoa, Inc.*, 501 F.3d 395, 397 (5th Cir. 2007) ("The

16  integration clause prevents the [plaintiffs] from establishing justifiable reliance, a

17  required element of a fraudulent inducement claim"); *Shelter Mortgage Corp. v. Castle*

18  *Mortgage Co., L.C.*, 117 Fed. Appx. 6, 11 (10th Cir. 2004) (fraudulent-inducement

19  defense failed because "[t]he written Agreement preclude[d] any claim of reasonable

20  reliance on [plaintiff's] oral statements").

21      78. For similar reasons, the Agreement's limitation on amendments to those in

22  writing signed by the party to be charged (§ X.C.) also undermines or even forecloses

23  Plaintiff's claims.

24      79. That Defendants may use the Agreement in defense of Plaintiff's claims

25  provides yet another reason the Agreement's arbitration clause "relates to" this litigation

26  and supports removal to this Court.

27      80. Further, the resolution of Defendants' claims against Fumoto concerning the

28  disposition of the Suwaso shares Fumoto continues to hold and his obligation to

21

indemnify Defendants for Plaintiff's claims also may affect the outcome of this case. To the extent Fumoto is a shareholder, he may attempt to intervene or otherwise assert rights in connection with Plaintiff's claims.   To the extent Fumoto is required to indemnify Defendants from Plaintiff's claims, Defendants may not have to pay Plaintiff, even if he were to prevail on his claims against Defendants.

81. Thus, Plaintiff's claims relate to the Agreement and its arbitration clause in various ways, which warrants the removal of this action to federal court under the FAA and the Convention.

## IV.   This Notice Is Timely And Complies With All Procedural Requirements.

82. Removal is timely because trial has not yet commenced.  *See* 9 U.S.C. § 205 (permitting removal "at any time before the trial").  "The meaning of [] section [205] is clear: a defendant may remove a qualifying state court action to federal court at any time before the claims raised in the state court action have been adjudicated." *Infuturia*, 631 F.3d at 1139.

83. In addition, Defendants have not filed an Answer or other responsive motion or pleading, and the Parties have not commenced any discovery.

84. All Defendants properly served to date join this Notice of Removal.

85. This pleading constitutes the notice of removal required by 28 U.S.C. § 1446(a).   True and correct copies of all process, pleadings, and orders served on Defendants, or otherwise filed in the Superior Court, are attached as Exhibits B-N.  A true and correct copy of the CNMI Superior Court's docket is attached as Exhibit O.

86. Defendants will file this Notice with the CNMI Superior Court and serve a copy on Plaintiff.

/ / /

22

NOTICE OF REMOVAL OF DEFENDANTS E.LAND WORLD CO., LTD., SUWASO CORPORATION, MICRONESIA RESORT, INC., AND KWANGWON SEO

1  DATED:  February 5, 2016          RICHARD W. PIERCE LAW OFFICE LLC

2

3                                     By: _____

4                                         Richard W. Pierce

5                                     Attorneys for Defendants E.Land World Co., Ltd.
                                      (erroneously sued as E-Land World, Ltd.), Suwaso
6                                     Corporation, Micronesia Resort, Inc. (erroneously
                                      sued as Micronesian Resort, Inc.), and KwangWon
7                                     Seo (erroneously sued as Dennis Seo)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL OF DEFENDANTS E.LAND WORLD CO., LTD., SUWASO CORPORATION,
MICRONESIA RESORT, INC., AND KWANGWON SEO

Doc. # DC-8633523 v.12

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on this 5th day of February, 2016 I caused a copy of the

3

foregoing document to be served via hand delivery to:

4

William M. Fitzgerald

5

Law Offices of William M. Fitzgerald

2nd Floor, Macaranas Building

6

Garapan Beach Road

P.O. Box 500909

7

Saipan, MP 96950

8

*Attorney for Plaintiff*

9

10

By _____

Richard W. Pierce

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24

Doc. # DC-8633523 v.12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Torres v. E-Land World Ltd. et al.*
**Removed from Superior Court Case No. CV-15-0161**

**<u>Index of Exhibits to Notice of Removal</u>**

| | Description |
|---|---|
| A. | AAA Rule 7 and ICDR Article 19 |
| B. | Complaint and Demand for Jury Trial, filed October 19, 2015 |
| C. | Summons, filed October 19, 2015 |
| D. | Declaration of Service (Suwaso Corporation), filed October 22, 2015 |
| E. | Declaration of Service (Dennis Seo), filed October 22, 2015 |
| F. | Entry of Appearance for Suwaso Corporation and Dennis Seo, filed November 3, 2015 |
| G. | Declaration of Service (Micronesian Resort, Inc.), filed November 4, 2015 |
| H. | Stipulation and Proposed Order for Response to Complaint, filed November 5, 2015 |
| I. | Order (granting Stipulation and Proposed Order for Response to Complaint) , filed November 9, 2015 |
| J. | Declaration of Service (E-Land World, Ltd.), filed December 11, 2015 |
| K. | Stipulation and Proposed Order for Response to Complaint and Summons, filed December 29, 2015 |
| L. | Order (granting Stipulation and Proposed Order for Response to Complaint and Summons), filed December 29, 2015 |
| M. | Stipulation and Proposed Order for Extended Response to Complaint, filed January 28, 2016 |
| N. | Order (granting Stipulation and Proposed Order for Extended Response to Complaint), filed January 29, 2016 |
| O. | Superior Court File & Serve Xpress Case History (docket sheet) |