# EXHIBIT B

1  William M. Fitzgerald, Esq.
   LAW OFFICES OF WILLIAM M. FITZGERALD
2  2nd Fl. Macaranas Bldg., Garapan Beach Road
3  P.O. Box 500909
   Saipan, MP 96950
4  Tel:   (670) 234-7241
   Fax:   (670) 234-7530
5  Email: fitzgerald.law@gmail.com

6  Attorney for Plaintiff

7

8

E-FILED
CNMI SUPERIOR COURT
E-filed: Oct 19 2015 02:55PM
Clerk Review: Oct 19 2015 03:40PM
Filing ID: 58031804
Case Number: 15-0161-CV
Luis Villagomez

9          IN THE SUPERIOR COURT
                    FOR THE
10  COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

11

12  VINCENT DLG. TORRES,                    CIVIL ACTION NO. 15-

13                    Plaintiff,

14          v.                              **COMPLAINT AND DEMAND FOR JURY TRIAL**

15  E-LAND WORLD, LTD., SUWASO
16  CORPORATION, MICRONESIAN
    RESORT, INC., ROH, JONG-HO, SEONG
17  MIN KANG, IL KYU KIM, TAE HO KIM,
    STEVE HWANG, DENNIS SEO and
18  DOES 1-3,

19                    Defendants.

20

21                          **JURISDICTION**

22      1.      This court has jurisdiction pursuant 1 CMC §3202.

23                            **PARTIES**

24      2.      Plaintiff Vincent DLG. Torres ("Vince") is a resident of the CNMI and the owner

25

26  of 39,250 shares of Suwaso Corporation ("Suwaso").

27

28

                                1

3.     Defendant E-Land World, Ltd. ("E-Land") is a large Korean corporation, the sole shareholder of Micronesian Resort, Inc. ("MRI"), and the employer or principal of the named defendants sued personally in this action.

4.     Defendant MRI is a wholly owned subsidiary of E-Land, organized and existing under the laws of the CNMI and the majority shareholder of Suwaso.

5.     Defendant Suwaso is a corporation incorporated pursuant to laws of the CNMI in 1985.

6.     Defendants Roh, Jong-Ho ("Roh"), is an employee of E-Land and a former director of MRI and Suwaso.

7.     Defendants Seong Min Kang ("Kang"), Il Kyu Kim ("Kim I") and Tae Ho Kim (Kim T") were, at all times mentioned herein, the directors and officers of both, MRI and Suwaso.

8.     Defendant Steve Hwang is an agent of E-Land who provided legal advice to all the defendants that assisted them in their breaches of fiduciary duty.

9.     Defendant Dennis Seo is an employee of E-Land delegated to manage and or act on behalf of Suwaso, who by his actions assisted the defendants in their breaches of fiduciary duty.

10.     Defendants Does 1-3 are, upon information and belief, employees of E-Land designated as part of their employment with E-Land to be directors and officers of MRI and Suwaso.

### NATURE OF THE ACTION

11.     At all time mentioned herein, defendant E-Land or one of its subsidiary companies, was the sole shareholder of MRI, who in turn was the sole shareholder of Suwaso and E-Land directed MRI and its other agents and employees named herein, to engage in the wrongful

2

conduct described in this complaint and E-Land, therefore, is directly responsible for the damage caused to Vince and was unjustly enriched by the opportunities and monies misappropriated by E-Land.

12.     This action is being brought directly and not derivatively because the facts recited and alleged in this complaint describe conduct which either caused a direct and unique injury to Vince or was a misappropriation of Suwaso funds that went solely to benefit E-Land, the *de facto* owner of MRI's majority shareholding of Suwaso and, therefore, only Vince and not the majority shareholder of Suwaso suffered a loss.

## FACTS

13.     Plaintiff Vince was born in Saipan, the first son of Vicente and Primitiva Torres.

14.     Vince's family home was in Koblerville, Saipan.

15.     When Vince was a teenager, construction began nearby his home on what was to become Coral Ocean Point Golf Course ("COP").

16.     Vince was fascinated by the construction of COP, as jungle land was transformed into a beautifully manicured golf course and luxurious hotel, with helicopters flying in and out of the resort.

17.     Lights were thereafter added to allow night golf, and this added to young Vince's fascination.

18.     While still a teenager, Vince remembers telling his uncle, Luis Benavente, that someday, he would own that golf course and his uncle telling him that was a very ambitious goal.

19.     In its early days, COP boomed and was a premier destination for Japanese tourists and golfers.  International celebrities stayed there, including Julio Iglecias.

20.     By the year 2000, however, COP had fallen upon hard times as a result of mismanagement, as well as corporate and employee malfeasance and wrongdoing.

3

21.     By 2011, the 25-year government land permit ("Permit") for COP's land was due to expire, and because of COP's problems and the poor reputation it had developed in the community, the government was not going to renew it.

22.     During this same time period, young Vince and his siblings had risen from their humble beginnings through ambition and hard work to become lawyers and community leaders, forming what has become a prominent Saipan law firm.

23.     Vince was aware of COP's problems and the likelihood that they would be unable to extend the "Permit" for the land and therefore he began to look for ways that he might be able to invest and be involved in allowing the resort to continue.

24.     Vince went to work to rehabilitate the reputation of Suwaso so as to be able to allow them to extend the "Permit" for fifteen (15) years and looked for a new investor who could bring new management and credibility to the resort.

25.     One of the persons he reached out to was a longtime family friend and Japan hotel owner named Yusuke Fumoto.

26.     Vince worked long and hard to convince Fumoto of the viability of investing in COP and Fumoto ultimately agreed to partner with Vince.  Fumoto bought the majority of Suwaso shares while Vince acquired the minority shares.

27.     After securing the extension of the "Permit", Fumoto and Vince immediately went to work to comply with the terms of the "Permit", which Vince's efforts had produced.  They commissioned designers and architects to draw up the plans to comply with the "Permit's" requirement and timely submitted them to the Government.

28.     The government claimed that the project could not proceed because COP had not paid back taxes.

29.     Through tremendous effort, Vince was able to reconstruct the disorganized tax records of Suwaso, which proved the government's claim of unpaid back taxes was incorrect.

30.     These actions by officials of the CNMI government discouraged Mr. Fumoto and caused him to lose confidence in the CNMI government and he told Vince that because of this concern, he could not justify moving forward with the project to his company and that he, therefore, wanted to sell his shares in Suwaso.

31.     Fumoto gave Vince full authority to negotiate the sale of Suwaso on his behalf and also agreed that he would not ask Vince to include his shares in the sale, but agreed that Vince could remain as a minority shareholder.

32.     Vince discussed the sale with a number of potential buyers, including defendant E-Land.

33.     E-Land told Vince that it was the best candidate to own and operate Suwaso because E-Land was a Christian company adhering to the highest ethical standards and acutely conscious of their responsibilities to the people of Saipan who were providing the property for the COP resort business as well as to Vince whose reputation as a local minority shareholder would always be respected and fostered.

34.     In addition, E-Land told Vince that it was the best partner for Vince because it was a billion dollar company and had all the money and resources to comply with the "Permit" and immediately build 200 or more hotel rooms; and that E-Land would invest millions of dollars into the resort and turn it into a Five Star Resort.

35.     E-Land assured Vince that he would be a valued member of the E-Land family and that they would never do anything to violate his rights as a minority shareholder or tarnish his reputation by actions, which would reflect badly on him as a minority shareholder of a company holding the "Permit" from the government.

5

36.    Although the purchase price offered by E-Land was lower than what Fumoto wanted to accept, he agreed based on Vince's recommendation that E-Land had promised him that, *inter alia*, they would conduct themselves in strict conformity to the "Permit", that they would keep Vince on as a director, that Vince would be consulted regarding the company's actions and his rights as a minority shareholder would be protected.

37.    Based on the recommendation of Vince who was relying upon the representations of E-Land, Fumoto agreed to the sale, and on August 22, 2012, MRI, E-Land's designee became the majority owner of Suwaso stock, with Vince holding fifteen percent.

38.    Prior to the sale, in order to induce Vince to persuade Fumoto to sell to E-Land, E-Land made several specific representations and promises to Vince, which included, but were not limited to:

(a)    Vince would be a valued member of E-Land Group and would be keep fully informed of all Suwaso plans and actions.

(b)    Vince would remain as a director of Suwaso.

(c)    Property that Suwaso needed to secure from Juan Tenorio would be purchased in fee simple to be held in Vince's name, with Vince leasing the property to Suwaso for 55 years.

(d)    All requirements of the "Permit" would be complied with.

(e)    All accounts from vendors and other debts owed by Suwaso would be paid and brought up-to-date.

39.    E-Land has reneged on each of these representations and promises and failed to honor them.

40.    The defendants, including but not limited to Steve Hwang and Dennis Seo, each and all of them acting in concert, assisting, aiding and abetting each other have violated CNMI law

6

by, *inter alia*, denying Vince access to the books and records of Suwaso, failing to provide a proper accounting, failing to provide a yearly report as required by the bylaws, usurping corporate opportunities that rightfully belong to Suwaso and negotiating loans for more than five million dollars without proper authorization.

41.     Steve Hwang has been unlawfully advising Suwaso Corporation on legal matters, even though he is unlicensed and not authorized to practice law in the CNMI.

42.     Dennis Seo has been unlawfully reviewing Suwaso's corporate documents and making decisions on Suwaso's business and corporate matters, but he is not an employee of Suwaso and has no authority to make any decision on behalf of Suwaso.

43.     In 2014, after taking control of Suwaso and after promising Vince that E-Land and all of its agents, employees and designees controlling MRI and Suwaso would conduct the affairs of Suwaso in a proper manner giving due consideration to proper corporate governance, the laws of the CNMI and the rights of the minority shareholders, E-Land, through its agents employees and designees, sold special VIP memberships in Korea that allowed the members special discounted rates at COP, without providing any notice to Vince or the the shareholders of Suwaso and without any compensation to Suwaso.

44.     Vince has made repeated requests to inspect the books and records of Suwaso, pursuant to the Suwaso bylaws and 4 CMC 4681-4683, but Suwaso has failed and refused to provide full access to all of the records Vince is entitled to inspect, and has intentionally concealed records from him while falsely informing him that they have shown him all of the records.

## FIRST CAUSE OF ACTION

## FRAUDULENT MISREPRESENTATION

45.     Plaintiff restates and realleges as if fully set forth herein all the allegations contained in paragraphs 1 through 44.

46.     Prior to the acquisition of the Suwaso shares by E-Land, defendant Roh, through Brian Shin and Juhn Woo, employees of E-Land and acting on its behalf, made representations and promises to Vince on behalf of E-Land for the specific purpose of persuading Vince to convince Fumoto to sell his shares to Suwaso.  Specifically E Land represented and promised that if Vince would convince Fumoto to sell his Suwaso shares to E-Land, that E-Land would:

(a)     Retain Vince as a director of Suwaso.

(b)     Treat Vince with the respect due to a minority shareholder who secured for E-Land their goal of acquiring Suwaso.

(c)     Treat Vince as a valued member of the E-Land group and keep him fully informed of all E-Land projects, plans and actions affecting Suwaso.

(d)     Designate Vince as the holder of Juan Tenorio's property that E-Land needed for the continuation of the golf course.

(e)     Comply with all the terms of the "Permit" that Vince worked diligently to secure.

(f)     Pay all debts owing by Suwaso.

47.     Despite Vince's success in persuading Fumoto to sell his shares to E-Land, thereby allowing E-Land to achieve its goal of securing Suwaso, it has failed and refused to comply with the representations and promises made to Vince.

48.     At the time that Roh, Brian Shin and Juhn Woo made these representations and promises, they had complete authority to act on all things related to Suwaso on behalf of E-Land.

8

49.   At the time that Roh, Brian Shin and Juhn Woo made these representations and promises on behalf of E-Land, they knew them to be false and that E-Land had no intention of honoring or fulfilling them.

50.   These representations by Roh, Brian Shin and Juhn Woo on behalf of E-Land, were made intentionally by them on behalf of E-Land at the direction, and with the approval of E-Land for the specific purpose of deceiving Vince and inducing his reliance on the representations.

51.   Vince did rely on E-Land's representations and promises and based on this reliance, convinced Fumoto to sell his shares of Suwaso to E-Land even though there were other buyers available.

52.   If Vince had known that the representations and promises were false, he would not have persuaded Fumoto to sell the controlling interest of Suwaso to E-Land.

53.   As a result of these false representations and promises, Vince has been misled, defrauded and has suffered injury and damage in an amount to be proven at trial.

54.   The intentional and fraudulent nature of these actions justify an award of punitive damages to punish E-Land for its deceitful conduct and to deter others from engaging in similar conduct.

## SECOND CAUSE OF ACTION

### ACCOUNTING

55.   Plaintiff repeats and realleges as if fully set forth herein the allegations contained in paragraphs 1 through 54.

56.   Suwaso, its directors, officers and majority shareholders, owed a duty to Vince as a minority shareholders to furnish Suwaso's annual financial statements prepared for the corporation on the basis of generally accepted accounting principles or that included a balance

sheet as of the end of the fiscal year, an income statement for that year, and a statement of any change in the shareholders equity for the year.

57.    Through the conduct complained of herein, Suwaso, at the direction of E-Land, MRI, their agents and designees, repeatedly failed and refused to provide Vince with an accounting prepared in conformity with generally accepted accounting principles.

58.    Suwaso further failed to provide the financial reports in a timely manner to the minority shareholders and to explain to them the method of accounting used in the financial reports furnished at the beginning of annual meeting.

59.    Steve Hwang, employee of E-Land, intentionally, maliciously and unlawfully advised and conspired with Dennis Seo to deprive and in fact deprived minority shareholder Vince from inspecting Suwaso's corporate books despite Vince's request to inspect the Suwaso's corporate books pursuant to CNMI law, thereby violating Vince's right to inspect the corporate books.

60.    As a direct and proximate result of Suwaso's conduct detailed above and in other respects, Vince has been damaged in an amount to be proven at trial.

61.    As a result of the past and continuing refusal of Suwaso to provide Vince with the records he is entitled to under the Suwaso bylaws and CNMI law, Vince has been left in the dark and misled regarding the business and financial conditions of Suwaso and is, therefore, entitled to a mandatory injunction compelling Suwaso to comply with 4 CMC 4681-4683 and the Suwaso bylaws.

62.    Because of the willful, wanton and intentional nature of Suwaso's conduct as alleged herein, and its abuse of a position of trust, the majority shareholders and directors of MRI and Suwaso are liable for an award of punitive damages.

### THIRD CAUSE OF ACTION

### FRAUDULENT CONCEALMENT AND USURPATION OF CORPORATE OPPORTUNITY

63.     Plaintiff restates and realleges as if fully set forth herein all the allegations contained in paragraphs 1 through 62.

64.     At all times mentioned herein, directors Kang, Kim I and Kim T were employees of E-Land, acting on its behalf in positions as directors and officers of Suwaso and MRI while MRI was the majority shareholder of Suwaso and, therefore, all had a fiduciary duty to Suwaso and to Vince.

65.     After taking control of Suwaso, E-Land embarked upon a scheme to wrongfully misappropriate business opportunities and the funds they generated from Suwaso to which these opportunities rightfully belonged.

66.     These misappropriated opportunities include but are not limited to the following:

(a)     After taking over Suwaso, MRI, its officers and directors, along with Suwaso's officers and directors, conspired with E-Land and acting on its behalf, set up a "VIP Membership" plan, whereby residents of Korea would pay a fee to E-Land in order to become members of a Coral Ocean Point Club.

(b)     This membership entitled them to receive discounts of from 50% to 100% on rooms, golf and restaurants at Coral Ocean Point.

(c)     The membership fee was paid in Korea and was not reported as income to Suwaso, but rather, went to benefit E-Land.

(d)     Since the initiation of this VIP program, an undetermined number of "members" have come to Saipan and were given discounts on rooms, golf and restaurants, depriving Suwaso and Vince of their rightful entitlement.

11

67.     Defendants and each of them have conspired together to fraudulently conceal this unauthorized usurpation of Suwaso's business opportunity from the minority shareholders and Vince.

68.     Vince was not informed of this VIP program prior to its initiation.

69.     Defendants and each of them continue, as of this date, to secretly, deceitfully and wrongfully appropriate the funds of Suwaso for the benefit of E-Land through this program.

70.     In late September 2015 Vince exercised his right under CNMI law, as well as the bylaws of Suwaso to inspect the books and records of the corporation.

71.     Initially, based on legal advice received from Korean lawyers, Dennis Seo, an E-Land employee acting as a Suwaso manager, refused to allow Vince access to the records.

72.     Vince persisted in his demand to inspect the records and Suwaso upon the advice of a CNMI lawyer agreed to his request and allowed a limited inspection of the records.

73.     Up to now, Vince has never been informed of the VIP program and the records that he was shown did not include any reference to this program or any record of money received pursuant to the program.

74.     Despite this, Vince was informed in writing by Suwaso, on October 8, 2015, that Suwaso had provided him with all the existing documentation that he had requested.

75.     This statement was false and was known at the time by E-Land's agents making the statement to be false and was intentionally made to conceal from Vince the usurpation of this Suwaso business opportunity and the misappropriation of corporation funds by E-Land.

76.     As a result of this usurpation of a corporate-opportunity and the misappropriation of funds that should have gone to Suwaso, Vince has been damaged in an amount to be proven at trial.

77.   Through the conduct complained of herein, E-Land MRI, its employees, agents and designees failed to disclose material facts regarding the benefits it derived from the scheme and how Suwaso would be deprived of benefits it was entitled to.

78.   E-Land MRI, their agents, employees and designees were aware that their actions were adverse to the interests of Vince but did not disclose this conflict of interest or obtain authorization, approval or ratification of their scheme to sell VIP memberships.

79.   Because Suwaso is completely controlled by E-Land through its employees and agents and all the misappropriated funds have gone to E-Land, Vince has suffered a direct injury and is entitled to recover for it.

80.   The intentional and fraudulent nature of these actions as well as the intentional violations of fiduciary duties owed, justify an award of punitive damages to punish E-Land for its deceitful conduct and to deter others from engaging in similar conduct.

## FOURTH CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

81.   Plaintiff restates and realleges as if fully set forth herein all the allegations contained in paragraphs 1 through 80.

82.   At all time mentioned herein, defendant directors and defendant majority shareholders of Suwaso had a fiduciary duty to act with the utmost good faith in conducting the affairs of the corporation.

83.   MRI, as the majority shareholder of Suwaso, and Kang, Kim I and Kim T, as directors of MRI and Suwaso, had a fiduciary duty to act with the outmost good faith and fidelity regarding Vince's rights as a minority shareholder.

84.   While defendants Kang, Kim I and Kim T were directors of Suwaso, and while MRI was the majority shareholder and they were all under the direct control and following the

13

directions of E-Land, they negligently, carelessly and intentionally failed to perform the duties required of directors, so that funds and assets of Suwaso were mismanaged, wasted, diverted and siphoned off to MRI and E-Land. Vince thereby suffered great loss, the value of his stock was greatly reduced and he lost large gains through the waste of defendant corporation's assets and capital value.

85.     E-Land and MRI, through their agents, employees and designees, further violated their duties by, *inter alia*, fraudulently concealing accounting records of the corporation, engaging in self-dealing, making unauthorized loans by Suwaso from MRI and usurping corporate opportunities that rightfully belonged to Suwaso.

86.     Defendant E-Land has been unjustly enriched as the result of this negligent and intentional failure of its employees and agents to faithfully perform the duties of majority shareholder and directors of Suwaso.

87.     At all times prior to the commencement of this action, defendants and each of them have maintained control of the board of directors of Suwaso, through the exercise of their superior shareholding in Suwaso.

88.     Through the conduct complained, the defendants and each of them decreased the value of Suwaso shares and managed Suwaso in a manner that was adverse to the interests of Vince, a minority shareholder, while allowing E-Land to benefit from the misappropriation of Suwaso funds.

89.     As a direct and proximate result of the defendants' conduct detailed above and in other respects, Vince has been damaged in an amount to be proven at trial.

90.     Because of the willful wanton and intentional nature of the defendants' conduct as alleged herein and defendants' intentional abuse of trust, the defendants are liable for punitive damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## ASSISTING A BREACH OF FIDUCIARY DUTY

91.     Plaintiff restates and realleges as if fully set forth herein all the allegations contained in paragraphs 1 through 90.

92.     At all times relevant herein, E-Land had total and complete control over MRI and its directors, as well as Suwaso and its directors.

93.     All of the breaches of fiduciary duty, which are alleged in this complaint, were done at the direction of E-Land, by its employees in their position as directors of MRI and Suwaso.

94.     By the actions as described herein, E-Land and its agents, Roh, Steve Hwang and Dennis Seo, assisted defendants MRI and the directors of Suwaso in breaching the fiduciary duty they owed to Vince.

95.     As a result of E-Land and its agents Roh, Steve Hwang and Dennis Seo's actions, aiding, abetting and assisting the breach of fiduciary duty owed to Vince, Vince has been financially damaged and E-Land unlawfully enriched.

96.     The willful, intentional, deceitful and fraudulent nature of the actions taken by E-Land, Roh, Steve Hwang and Dennis Seo, in assisting the breaches of fiduciary duty described herein merit the imposition of punitive damages.

## PRAYER

WHEREFORE, the plaintiff requests judgment against defendants for the following:

1.      For compensation damages according to proof;

2.      For a mandatory injunction compelling Suwaso to produce records and an accounting pursuant to the Suwaso bylaws and 4 CMC 4681-4683;

15

3.     For punitive damages to punish E-Land and the other defendants and to deter E-Land and others from engaging in similar conduct;

4.     For Attorney's fees; and

5.     For such other and further relief as the court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury.

DATED this 17th day of October, 2015.

Respectfully submitted,
LAW OFFICE OF WILLIAM M. FIZGERALD


_____/s/_____

By:   WILLIAM M. FITZGERALD
Attorney for Plaintiff

16

## VERIFICATION

I declare under penalty of perjury that I have read the foregoing Complaint and Demand for Jury Trial and that is it true and correct to the best of my recollection and knowledge.

This declaration was executed on this _19th_ day of October, 2015, at Saipan, Commonwealth of the Northern Mariana Islands.

VINCENT DLG. TORRES

17